THE MAYOR AND ALDERMEN OF THE CITY OF PATERSON, APPELLANT, v. THE MONTCLAIR WATER COMPANY, RESPONDENT.

Argued November 19, 1914—Decided June 17, 1915.

The Water Company act of 1876 (*Comp. Stat., p.* 3635), authorizing water companies incorporated under that act, to "take and divert any and all such springs and streams of water * * * as shall be necessary and proper to enable said corporation to carry into effect the purposes of its incorporation" by condemnation proceedings, limits the exercise of such power to the acquisition of water, and water rights, which may be reasonably necessary for the supplying of the municipality, and the inhabitants thereof, in which the company's works are located. The supplement of 1888 (*Pamph. L., p.* 180) to the said act, providing that it should be lawful for any company incorporated under the act to add to and extend their works and to take all such land and divert all such streams of water as shall be necessary for the purposes of its incorporation, does not enlarge such power so as to give such company the right of condemnation for the purpose of supplying water to other communities than the one in which its works are located.

On appeal from the Supreme Court.

For the appellant, *Edward F. Merrey, William B. Gourley* and *John W. Griggs.*

For the respondent, *Gilbert Collins.*

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE.   The Montclair Water Company was incorporated in January, 1887, under what is known as the Water Company act of 1876. *Comp. Stat., p.* 3635.   It was formed, as is declared in its certificate of incorporation filed in the secretary of state's office, "for the purpose of constructing, maintaining and operating water works in the township of Montclair, and for the purpose of supplying said township and the inhabitants thereof with water; and for the purpose of constructing, maintaining and operating works in connection therewith for the purpose of supplying water to such other cities, towns, townships and villages as it may be lawful for it to supply, for public and private uses, by contract with any of such cities, towns, townships and villages made with their respective municipal or other authorities."   It sought to acquire by purchase from the city of Paterson the right to take and divert water continuously until the 15th day of January, 1987, from the Passaic river at Little Falls, not exceeding an average quantity in any year of seven million gallons of water per day, to be used *for the purposes of the corporation.*   Being unable to acquire this right by purchase it sought to obtain it by condemnation, and applied to a justice of the Supreme Court to appoint commissioners to fix the compensation which it should pay to the city for the abstraction of water from the Passaic at Little Falls for the period mentioned, and in the amount and for the purposes just stated.   Commissioners having been appointed pursuant to this application, the city sued out a *certiorari* for the purpose of testing the right of the water company to exercise the power of eminent domain for the purposes specified.   At the hearing had on the return of the writ the Supreme Court affirmed the water company's right, and the present appeal is taken to test the soundness of the judgment of that tribunal.

The first section of the Water Company act of 1876 reads as follows: "Any number of persons, not less than seven, a majority of whom shall reside in this state, may form a·company for the purpose of constructing, maintaining and oper-

ating water works in any city, town, township, village, borough, or other municipality of this state having a population of not more than fifteen thousand, and for the purpose of supplying such city, town, township, village, borough or other municipality, and the inhabitants thereof, with water." The third section of the act provides that any company incorporated thereunder "shall have power, to take and divert any and all such springs and streams of water, * * * as shall be necessary and proper to enable said corporation to carry into effect the purposes of its incorporation." By the fifth section it is enacted that, "in case said corporation cannot agree with the owner or owners, or other persons interested in any lands which said corporation may desire to take, use and occupy, or from which they may desire to take or divert, either in whole or in part, any spring or springs, stream or streams of water for the purposes of its corporation, as to the amount of compensation to be paid to such owner or owners for such taking, use, occupation or diversion," condemnation proceedings may be resorted to for their acquisition.

It is to be observed that the power to take and divert water given by section 3, and the right to exercise the power of eminent domain for its acquisition given by section 5, are, each of them, limited in character; that is to say, the company is only permitted to acquire water, either by purchase or condemnation, for the purposes for which it is authorized to be incorporated. What those purposes are is declared by section 1 of the act. The Supreme Court considered that by this section the legislature expressed the intent to create water companies for two distinct purposes—*first,* the construction, maintenance and operation of water works in municipalities, and *second,* the supplying of the municipality in which the works were constructed, and the inhabitants thereof, with water. That the first purpose, standing alone, carried with it the right to supply water generally to consumers outside of, as well as within, the municipality, and that the second purpose was not a limitation upon the first. That

the two purposes were independent, and that a company organized under the act might carry out both.

It does not seem to us that this construction of the statute is sound. In our opinion the intention of the legislature, as exhibited in this whole section, is to limit the power of a water company incorporated under the act to the supplying of the municipality, and the inhabitants thereof, in which its works are located. If this be not so, the latter part of the section (that which the Supreme Court calls the second purpose exhibited by it) is mere surplusage; for, if by the first grant of power contained in it, *i. e.*, the authority to construct, maintain and operate water works in a municipality, the right to supply with water any municipality which the company might desire to contract with was conferred upon it, that grant included the right to supply the municipality in which the works were located, and the second purpose sought to be dealt with in the section is already provided for. This being so, in order to give the latter clause of this section any meaning at all, it must be construed to be a limitation upon the broad power which might otherwise be claimed to have been conferred by the earlier part of the section, and to restrict the right of companies incorporated under this statute to the supplying of water to the municipality in which its works are located, and to the inhabitants thereof.

We conclude, therefore, that by the true construction of the Water act of 1876, the power of eminent domain conferred upon companies incorporated under it can only be exercised for the purpose of acquiring water and water rights which may be reasonably necessary for the supplying of water to the municipality, and the inhabitants thereof, in which the works of such company may be located.

In 1888 a supplement to the Water act of 1876 was passed, providing that it should be lawful for any company incorporated under the act "to add to and extend their works to such extent as may be necessary to carry out the purpose of its incorporation, and for that purpose to take all such lands and divert all such streams of water, in the manner herein-

before provided, as shall be necessary for that purpose."
*Pamph. L., p.* 180.    The power of eminent domain con-
ferred by this legislative provision can only be exercised,
however, for the purpose for which the corporation was au-
thorized to be formed, and that purpose, at the time of the
enactment of this supplement, was limited to that which was
specified in section 1 of the original act.   In other words, this
supplement does not at all enlarge the power conferred by
the original act, except so far as its exercise becomes neces-
sary by reason of the addition to, and extension of, the com-
pany's works for the purpose authorized by the original
statute, namely, for the purpose of adding to the water-supply
of the municipality in which its works are located, when such
addition may become necessary by reason of increase in the
consumption of that commodity by the municipality and its
inhabitants.

What the Montclair Water Company seeks to acquire by
the condemnation proceeding under review is the right to
take and divert water continuously until the 15th day of
January, A. D. 1987, from the Passaic river, at Little · Falls,
"for the purposes of said corporation."   It so states in its
petition.   And we understand that by the words, "the pur-
poses of said corporation," the company means that it seeks
to acquire this water for the purposes specified in its certifi-
cate of incorporation, namely, for the purpose of supplying
the township of Montclair and its inhabitants with water,
and for the further purpose of supplying that commodity to
such other cities, towns, townships and villages as it may
heretofore have made legal contracts with for such supply.
This we think it cannot do, and for the reasons already in-
dicated.   It may condemn water and water rights for the
purpose for which it was authorized to become incorporated,
viz., for the purpose of supplying Montclair, and for that
purpose only.   The water which it may require for the pur-
pose of supplying other municipalities with which it has made
contracts it must obtain by purchase from, or agreement with,
those who control the same.

The judgment under review will be reversed.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, TRENCHARD, PARKER, BERGEN, BLACK, VREDENBURGH, WHITE, HEPPENHEIMER, WILLIAMS, JJ.   11.

Argued November 19, 1914—Decided June 14, 1915.